UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-16-17

-----------------------------------------------------------------x

THOMAS HANSEN,

         Plaintiff,

-against-

WWEBNET, INC., PAUL T. SWEENEY, individually and in his capacity as an officer of the corporation Wwebnet, Inc., ROBERT KELLY, Inc., individually and in his capacity as an officer of the corporation Wwebnet, Inc.,

         Defendants.

-----------------------------------------------------------------x

1:14-cv-2263 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

## I. INTRODUCTION

In this diversity action, Plaintiff Thomas Hansen seeks damages for fraud against Defendant Sweeney, stemming from Hansen's investments in Defendant Wwebnet, Inc. ("Wwebnet"), the now-defunct media content software developer, of which Robert Kelly was the founder and director. Pursuant to the Court's July 31, 2015 order in this matter, the only remaining factual claims against Sweeney relate to alleged misrepresentations concerning whether a contract between Wwebnet and Universal Music UK ("Universal") was actively generating revenue. Critical to that allegation is Plaintiff Hansen's assertion that between 2005 and 2008, during which Hansen invested in Wwebnet, Defendant Sweeney failed to correct Kelly's misrepresentations related to Kelly's executive compensation and Wwebnet's development and ownership of software and possession of a revenue-bearing contract with Universal.

In September of 2014, Kelly pled guilty and was sentenced before Hon. Paul A. Crotty under docket number 12-CR-888 (PAC) for crimes associated with the fraud alleged by Plaintiff Hansen in the instant civil case. Defendant Sweeney and Plaintiff Hansen agree that Kelly possesses

necessary information about Defendant Sweeney's day-to-day responsibilities at Wwebnet and what information was at Defendant Sweeney's disposal. Moreover, because Plaintiff Hansen's allegations rely on: (1) representations he asserts were made by Defendant Sweeney in the presence of Kelly and (2) representations by Kelly that Defendant Hansen knowingly failed to correct, Kelly's deposition is of vital interest to the parties.

Kelly was served with a subpoena to appear for an oral deposition on September 13, 2016. He appeared at the scheduled deposition without counsel. During the deposition, Kelly provided his name and address but invoked his Fifth Amendment right against self-incrimination as to all other relevant questions. On October 21, 2016, Magistrate Judge James Cott held a conference to discuss Kelly's invocation. During the conference, Kelly again appeared *pro se*. On October 24, 2016 Magistrate Judge Cott issued an order requiring Mr. Kelly to appear for deposition before the Court so that the Fifth Amendment issue could be addressed on a question-by-question basis. (ECF No. 75). In accordance with Magistrate Judge Cott's order, the deposition took place on November 21, 2016. Kelly appeared with *pro bono* counsel. During the deposition, Kelly invoked the Fifth Amendment privilege against self-incrimination in response to nearly every question put to him by deposing counsel.

Plaintiff Hansen and Defendant Sweeney objected to the invocations on the grounds that Kelly could not have a reasonable fear of future prosecution for his involvement with Wwebnet because he had already been prosecuted for those activities. Kelly noted that he was only prosecuted for his conduct at the company through 2008 and his plea agreement does not protect him from further prosecution. Because he continued to run the company and attempted to raise funds for the company until his arrest in 2012, he argued that he has a reasonable fear that testimony about those pre-2008 activities and fundraising attempts could lead to evidence regarding post-2008 activities and fundraising attempts. As the statute of limitations has not run on some of those activities, a prosecutor

could use Kelly's testimony about the contract with Universal prior to 2008 as a link to evidence of similar or related statements made after 2008. Similarly, if Kelly were asked to testify about Wwebnet's operations, technology, fundraising efforts, or other contracts, this testimony could serve as a link in a chain of evidence to such post-2008 statements or activities. Judge Cott overruled the majority of Kelly's individual invocations as improper on the grounds that Kelly's plea and allocution, and the manner in which deposing counsel tailored the questions to activities that occurred prior to 2008, Kelly's responses would have been unlikely to "furnish a link in the chain of evidence needed to prosecute him for additional crimes" that might have occurred after 2008. Deposition of Robert Kelly 113:21–114:21.

Defendant Sweeney and Plaintiff Hansen now move to compel Kelly to provide answers at deposition pursuant to Federal Rule of Civil Procedure 37(a). Kelly opposes the motion. For the reasons discussed below, Plaintiff Hansen and Defendant Sweeney's motion to compel Kelly's testimony is denied.

## II. DISCUSSION

### A. Legal Standard

The Fifth Amendment privilege against self-incrimination provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The privilege can be invoked in *any* proceeding where the witness 'reasonably believes [that his testimony] could be used in a criminal prosecution or could lead to other evidence that might be so used.'" Andover Data Servs. v. Statistical Tabulating Corp., 876 F.2d 1080, 1082 (2d Cir. 1989) (emphasis in original) (quoting Kastigar v. United States, 406 U.S. 441, 444–45 (1972)). A district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." Andover Data Servs., 876 F.2d at 1082 (citing Pillsbury Co. v. Conboy, 459 U.S. 248, 256–57 (1983)).

However, the right to refrain from answering potentially incriminating questions is not absolute. Rather, a witness may invoke the Fifth Amendment to decline to answer a deposition question only "when the individual has reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution." Cartier v. Micha, Inc., 2008 WL 2061386, at *2 (S.D.N.Y. May 12, 2008) (quoting OSRecovery, Inc. v. One Groupe Int'l, Inc., 262 F.Supp.2d 302, 306 (S.D.N.Y. 2003)); see also Hoffman v. United States, 341 U.S. 478, 486 (1951) (the privilege may be invoked "whenever a witness reasonably believes that his testimony could furnish a link in the chain of evidence needed to prosecute him for a crime"). The witness may not refuse to answer simply "because he declares that in so doing, he would incriminate himself — his say-so does not of itself establish the hazard of incrimination." Hoffman, 341 U.S. at 486. The witness claiming the privilege has the burden of demonstrating that he is "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." United States v. Apfelbaum, 445 U.S. 115, 128 (1980). The witness must, therefore, "offer tangible evidence that they are truly exposed to further prosecution" to substantiate their entitlement to plead the Fifth Amendment. U.S.S.E.C. v. Militano, 1991 WL 270116, at *2 (S.D.N.Y. Dec. 9, 1991).

Next, "it is for the court to say whether his silence is justified . . . and to require him to answer if it clearly appears to the court that he is mistaken." Id. (internal citation and quotation omitted); Estate of Fisher v. Comm'r of Internal Revenue, 905 F.2d 645, 648–49 (2d Cir. 1990) (the court determines whether "the danger of self-incrimination is real, not remote or speculative"). In conducting the necessary inquiry, "[a] judge must determine, 'from the implications of the question, in the setting in which it is asked, whether a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could

result." OSRecovery, Inc., 262 F.Supp.2d at 305 (internal quotations and citations omitted). The assessment of whether an injurious disclosure likely will result "must be governed as much by ... [the judge's] personal perception of the peculiarities of the case as by the facts actually in evidence." Hoffman, 341 U.S. at 487; United States v. Barile, 2007 WL 3534261, at *2 (N.D.N.Y. Nov.13, 2007) ("the judge's perception of the facts come into play as he assess the credible basis of the party's invocation of the right").

This analysis necessitates an examination of the deposition testimony itself. Rogers, 340 U.S. 367, 374 (1951) ("[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a real danger of further crimination") (internal quotations and additional citations omitted)).

### B. Analysis

Here, the Court must resolve whether, in refusing to answer certain deposition questions, Kelly had a "reasonable cause" to believe that providing such answers would lead to real danger of self-incrimination. All of the questions asked by deposing counsel pertain to Plaintiff's claim that Kelly and Sweeney engaged in a conspiracy to defraud him. In particular, Plaintiff asserts that Kelly and Sweeney lied about the existence of a contract and that lie induced Plaintiff to invest in Wwebnet. Based upon a careful review of the complete transcript of Kelly's deposition and a familiarity with the facts of this case, the Court finds that criminal prosecution for tax evasion and other crimes by a state and/or federal prosecutor is a "real danger" with regard to Kelly and is neither remote nor speculative. See Sharma v. New Opal Corp., 2005 WL 1086459, at *1–2 (S.D.N.Y. May 6, 2005); see also Krape v. PDK Labs, Inc., 2004 WL 831137, at *3 (E.D.N.Y. Apr. 19, 2004) ("the court must be satisfied that, given all the circumstances of the case, in connection with each area the questioning party wishes to explore, the claimant of the privilege is

confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination") (internal quotations and citations omitted). This principle is reinforced by the Supreme Court's mandate that "[t]he privilege against self-incrimination 'must be accorded liberal construction.'" Sharma, 2005 WL 1086459, at *2 (quoting Hoffman, 341 U.S. at 486); see also Fisher, 905 F.2d at 648 ("The guarantee must be broadly construed to serve the right it was designed to protect . . .").

All of the questions put to Kelly during his deposition seek information related to the alleged fraud and conspiracy, which are closely intertwined with Plaintiff's causes of action in this case. The Court concludes that during the deposition, Kelly had a reasonable belief that his responses to these questions "could create a link in the chain of evidence needed to prosecute him" for certain offenses. See Sharma, 2005 WL 1086459, at *2. Likewise, it is readily apparent that Kelly risks inculpating himself by answering such questions. These inquiries, therefore, fall squarely within the parameters of Fifth Amendment protection. See Osrecovery, Inc., 262 F.Supp.2d at 307 (witness need not answer deposition questions that seek information related to the alleged fraud).

### C. Alternative Relief

Although Kelly is entitled to assert his Fifth Amendment right against self-incrimination, as a result of doing so, he may be subject to an adverse inference later in this litigation. See Monteleone v. Leverage Group, 2008 WL 4541124, at *7 (E.D.N.Y. Oct.7, 2008) ("A Court may draw an adverse inference against a party in a civil action when a party invokes his Fifth Amendment right and refuses to testify in response to probative evidence offered against him.") (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); Brink's, Inc. v. New York, 717 F.2d 700, 709 (1983)); see also United States v. 15 Black Ledge Dr., 897 F.2d 97, 99,

103 (2d Cir.1990) (affirming drawing of adverse inference based upon defendant's assertion of Fifth Amendment privilege during deposition). At the appropriate time, Plaintiff, as the party denied discovery based upon the assertion of the privilege, can ask the Court to draw a negative inference from Kelly's invocation of the right. See LiButti v. United States, 107 F.3d 110, 121 (2d Cir.1997); United States v. 4003–4005 Fifth Ave., 55 F.3d 78, 82 (2d Cir.1995) (explaining that invocation of the Fifth Amendment privilege necessarily results in a disadvantage to opposing parties by "keep[ing] them from obtaining information they could otherwise get").

### III. CONCLUSION

For the reasons set forth above Plaintiff Hansen and Defendant Sweeney's motion to compel is denied.

**SO ORDERED.**

Dated: March 16, 2017
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**